IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VALLEY COMMERCIAL CAPITAL, LLC, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-18-878 |
| N795FM, LLC, and PHILLIP RIVERA, SR. | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND OPINION

Valley Commercial Capital sued N795FM, LLC and Phillip Rivera, Sr., alleging that they failed to pay under a 2013 loan agreement. Valley Commercial Capital seeks enforcement of that loan agreement, its related security agreement with N795FM, and its guaranty agreement with Rivera. Valley Commercial Capital seeks possession of the 1978 Israel Aircraft Industries Model 1124 airplane in which it held a first-position security interest as collateral for the loan. (Docket Entry No. 1).

Valley Commercial Capital has moved for summary judgment on its breach-of-contract claims, and the defendants have responded. (Docket Entry Nos. 18, 19). N795FM and Rivera argue that Valley Commercial Capital promised to accept half payments, estopping it from requiring full payment and creating genuine factual disputes material to determining the existence and extent of any default or breach. (Docket Entry No. 19).

Based on a careful review of the pleadings, the motion, and the response; the record; and the governing law, the court grants Valley Commercial Capital's motion for summary judgment on its breach-of-contract claims. (Docket Entry No. 18). The reasons are set out below.

I.  **Background**

The dispute over possession of the 1978 Israel Aircraft Model 1124 airplane arises from a 2008 loan agreement between Valley Commercial Capital and N795FM. Valley Commercial Capital loaned N795FM $1.2 million. In exchange, N795FM executed a security agreement giving Valley Commercial Capital a first-position security interest in the airplane. (Docket Entry No. 1 at ¶ 7; Docket Entry Nos. 1-1–1.2).

In 2013, Valley Commercial Capital loaned N795FM another $889,441.47 to refinance the loan. (Docket Entry No. 18 at ¶ 1; Docket Entry Nos. 18-3). The 2013 Note called for monthly payments of $11,334.49 from July 14, 2013 to May 14, 2021, and a final payment on June 14, 2021 for the outstanding principal, accrued interest, and other sums. (Docket Entry No. 18-3 at 2). Interest was set at 5.10%, with a 5% charge applying to payments made ten or more days late. (*Id.*). The 2013 Note defined default to include "failure to make any payment under this Note when due," stating that Valley Commercial Capital "may accept late payments or partial payments . . . without waiving any of its rights." (*Id.* at 3–4). The 2013 Note also stated that "[n]o amendment, modification or waiver of any provision of this Note nor consent to any departure by Borrower therefrom shall be effective, irrespective of any course of dealing, unless the same shall be in writing and signed by Lender," and that the terms "cannot be changed or terminated orally or by estoppel or waiver or by an alleged modification regardless of any claimed partial performance related thereto." (*Id.* at 4).

With the 2013 Note, Valley Commercial Capital and N795FM also executed a new security agreement giving Valley Commercial Capital the same security interest in the airplane. (Docket Entry No. 18 at ¶ 3; Docket Entry Nos. 18-6). Valley Commercial Capital perfected its interest by

recording the 2008 Security Agreement with the FAA. (Docket Entry No. 18 at ¶ 4; Docket Entry No. 18-7). Rivera provided personal guarantees for the 2008 and 2013 loans by executing a written Guaranty Agreement for each. (Docket Entry No. 1 at ¶ 10; Docket Entry Nos. 18-8–18-9).

Valley Commercial Capital alleges that beginning in July 2017, the defendants failed to make the monthly installment payments due under the Notes and Security Agreements. (Docket Entry No. 18 at ¶ 7). Valley Commercial Capital sent N795FM and Rivera a Notice of Default and Acceleration, Demand for Payment, and Notice of Imposition of Default Rate Interest on December 21, 2017, informing the defendants that a default event had occurred and that Valley Commercial Capital was exercising its right to accelerate the loan. (Docket Entry No. 18-10). The Notice identified "the aggregate amount immediately due and payable" as $499,759.78 and explained that the daily interest would increase from $68.85 to approximately $138.38 as of the Notice date.[1] (*Id.*). Valley Commercial Capital noted that it reserved its rights and remedies under the loan agreements. (*Id.*). In January 2018, Valley Commercial Capital sent N795FM and Rivera a final demand letter and filed this suit in March. It now seeks summary judgment.

The defendants respond that there was no breach of contract, supporting this assertion with Rivera's affidavit. They argue that Valley Commercial Capital agreed in 2017 to accept half payments and not foreclose on the outstanding loan debt in light of Rivera's declining health and diminished profits from his businesses. (Docket Entry No. 19 at 4). The defendants argue that

---

[1] The daily default interest rate stated in the December 2017 Notice differs slightly from the $146.81 daily interest rate stated in Jean Shedlock's affidavit. (*See* Docket Entry No. 18-1 at ¶ 13). This difference appears to stem from the underlying calculation of the default interest rate, which the 2013 Note explains is "up to and including Five Percent (5%) of Valley National Bank's Prime Rate." (Docket Entry No. 18-3 at 3). The Prime Rate is "the rate adopted by the Valley National Bank from time to time as its official prime rate." (*Id.* at 2).

3

promissory estoppel bars Valley Commercial Capital from foreclosing on the 2013 Note because N795FM and Rivera "reasonably and substantially relied upon [Valley Commercial Capital's] promise" to accept half payments and not to foreclose on the loan. (*Id.*). Beyond his affidavit, Rivera provides no evidence of a promise to modify the repayment terms or waiver of foreclosure rights.

## II. The Legal Standard for Summary Judgment

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (quoting *Griggs v. Brewer*, 841 F.3d 308, 311–12 (5th Cir. 2016)); *see also* FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir. 2014)). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2015) (per curiam) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.

*Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). "A fact is 'material' if its resolution could affect the outcome of the action." *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleo Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007).

## III. Analysis[2]

---

[2] The summary judgment evidence includes: an affidavit from Jean Shedlock, the Senior Vice President in the Special Assets Department for Valley Commercial Capital, (Docket Entry No. 18-1); an affidavit of Cameron J. Asby, counsel for Valley Commercial Capital, (Docket Entry No. 18-2); the 2013 Promissory Note documenting a $889,441.47 loan from Valley Commercial Capital to N795FM and the terms of the loan agreement, (Docket Entry No. 18-3); the 2008 Promissory Note documenting a $1,201,200 loan from Valley Commercial Capital to N795FM and the terms of the loan agreement, (Docket Entry No. 18-4); the 2008 Security Agreement documenting Valley Commercial Capital's security interest in the 1978 Israel Aircraft Industries Model 1124 airplane, (Docket Entry No. 18-5); the 2013 Security Agreement documenting Valley Commercial Capital's security interest in the 1978 Israel Aircraft Industries Model 1124 airplane, (Docket Entry No. 18-6); a 2017 FAA Priority Search Certificate showing Valley Commercial

The 2013 Note and 2013 Guaranty state that New Jersey law applies. (*See* Docket Entry No. 18-3 at 4; Docket Entry No. 18-9 at 3). To prevail on its breach-of-contract claims against N795FM and Rivera under New Jersey law, Valley Commercial Capital must demonstrate: (1) that "the parties entered into a valid contract"; (2) that N795FM and Rivera "failed to perform [their] obligations under the contract"; and (3) that Valley Commercial Capital "sustained damages as a result." *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007) (quotation omitted).

The parties do not dispute that the 2013 Note and Guaranty are valid and enforceable. N795FM and Rivera do not challenge Valley Commercial Capital's assertion that it has suffered monetary damage. N795FM and Rivera admit that in 2017, they began paying less than the full amount required each month under the 2013 Note. (Docket Entry No. 19 at ¶ 5). The parties disagree on whether Valley Commercial Capital agreed to accept half payments from N795FM and Rivera on the 2013 Note and Guaranty and waive foreclosure based on those payments.

Valley Commercial Capital argues that the defendants' failure to pay the full monthly amount was a default event under the 2013 Note. (Docket Entry No. 18 at ¶¶ 7–8). The Note states that a "failure to make any payment due under this Note when due" is a default, so that the defendants' failure to pay the $11,334.49 due monthly is a default event unless the parties agreed to modify the monthly amount due. (Docket Entry No. 18-3 at 3).

---

Capital's first-position security interest in the 1978 Israel Aircraft Industries Model 1124 airplane, (Docket Entry No. 18-7); the 2008 Guaranty Agreement executed by Phillip Rivera, Sr., (Docket Entry No. 18-8); the 2013 Guaranty Agreement executed by Phillip Rivera, Sr., (Docket Entry No. 18-9); the December 21, 2017 Notice of Default and Acceleration from Valley Commercial Capital, (Docket Entry No. 18-10); and an affidavit from Phillip Rivera, Sr., a defendant and the managing member of N795FM, LLC, (Docket Entry No. 19-1).

N795FM's and Rivera's sole argument against summary judgment is that their assertion that the parties agreed to modify the loan payment terms creates a genuine factual dispute material to determining default. The defendants submitted an affidavit from Rivera, stating that Valley Commercial Capital had agreed to accept half payments in 2017, in light of Rivera's declining health and his business problems. (Docket Entry No. 18 at ¶¶ 3–5). But Rivera and N795FM produced no writing showing that Valley Commercial Capital or any of its employees agreed to modify the repayment terms of the 2013 Note and related documents.

New Jersey's Statute of Frauds requires any "agreement by a creditor to forbear from exercising remedies" under an existing loan agreement must be documented in a signed writing. N.J. STAT. ANN. § 25:1-5(g). Covered loan agreements are those that are: (i) for loans over $100,000; (ii) "not primarily for personal, family or household purposes"; (iii) and "made by a person engaged in the business of lending . . . money or extending credit. N.J. STAT. ANN. § 25:1-5(f). The 2013 Note meets these requirements. Because the alleged modification to the loan agreement's repayment terms is unenforceable under the Statute of Frauds, it cannot create a genuine or material factual dispute that precludes summary judgment. *See, e.g., Provident Bank v. Antonucci*, No. 12-cv-07133, 2014 WL 7051781 (D.N.J. Dec. 12, 2014) (deposition testimony that the lender agreed to forgive loan payments did not create a genuine factual dispute because the alleged agreement was unenforceable under the New Jersey Statute of Frauds).

Promissory estoppel does not provide the defendants an exception to the Statute of Frauds or a basis for the court to find a genuine factual dispute. Under New Jersey law, the party invoking promissory estoppel must show: "(1) a clear and definite promise; (2) made with the expectation that the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and

7

substantial detriment." *Toll Bros., Inc., v. Bd. of Chosen Freeholders of the Cnty of Burlington*, 944 A.2d 1, 19 (N.J. 2008). "Under New Jersey law, 'the sine qua non' of a promissory estoppel claim is a clear and definite promise." *Ross v. Celtron Int'l, Inc.*, 494 F. Supp. 2d 288, 296 (D.N.J. 2007) (quoting *Zarrilli v. John Hancock Life Ins. Co.*, No. 06-1652, 2007 WL 979692, at *2 (3d Cir. Apr. 3, 2007)). In cases applying New Jersey law to promissory-estoppel claims in the summary-judgment context, courts have generally found genuine factual disputes material to determining breach of a contract if the party invoking estoppel provided competent evidence of a writing containing or stating the essential terms of the alleged promise. *See, e.g., Ross v. Celtron Intern., Inc.*, 494 F. Supp. 2d 288, 296–97 (D.N.J. 2007). The defendants have neither identified nor submitted any writing documenting this alleged modification to the 2013 Note and Guaranty. Nor have they produced or pointed to other competent record evidence supporting an inference that Valley Commercial Capital agreed to modify the loan payment terms. Rivera's affidavit is insufficient. The affidavit contains conclusory allegations and unsubstantiated assertions that are insufficient to overcome the merger clause or otherwise defeat summary judgment. *Boudreaux*, 402 F.3d at 540.

The 2013 Note states that its terms "cannot be changed or terminated orally or by estoppel or waiver or by an alleged oral modification regardless of any claimed partial performance thereto." (Docket Entry No. 18-3 at 4). Any "amendment, modification or waiver of any provision" of the 2013 Note is ineffective "unless the same shall be in writing and signed by [Valley Commercial Capital]." (*Id.*). While the court must draw all reasonable inferences in the light most favorable to the nonmoving party, the court cannot "assume 'in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts.'" *Boudreaux*, 402 F.3d at 540 (alteration in original)

(quoting *Little*, 37 F.3d at 1075)). The defendants have admitted that Valley Commercial Capital sent the notice of default and a final demand letter, stating that Valley Commercial Capital was holding the defendants to the repayment and other terms of the 2013 Note. (Docket Entry No. 18-10; *see* Docket Entry No. 18-1 at ¶ 12). No writing supports the defendants' claim that Valley Commercial Capital agreed in writing to modify and reduce the Note's repayment terms.

The record contains competent, uncontroverted evidence of the Notes, Guaranty Agreements, and the amounts due, as of August 27, 2018. There is no genuine factual dispute material to determining breach of the loan and guaranty contracts. Valley Commercial Capital has provided undisputed evidence showing that it is entitled to judgment as a matter of law on its breach of contract claims, and that N795FM and Rivera are liable for the unpaid amounts of $538,040.35 as of August 27, 2018, plus additional prejudgment interest, as detailed in Valley Commercial Capital's motion.

No later than **November 9, 2018**, Valley Commercial Capital must submit a proposed final judgment consistent with this Memorandum and Opinion.

SIGNED on October 30, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge